[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12674
_____

D.C. Docket No. 4:09-cv-00202-RH-WCS

TONYA WEINBERG GILMORE,
JUANITA WEINBERG PRINCE,

Plaintiffs - Appellants,

versus

PAM HODGES,
Lieutenant Medical Supervisor,
DONALD NEWSOME,
Sergeant Security,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 20, 2013)

Before MARCUS, BLACK and RIPPLE,[*] Circuit Judges.

MARCUS, Circuit Judge:

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Tonya Weinberg Gilmore and Juanita Weinberg Prince, daughters of the late Kenneth Weinberg, appeal the district court's grant of summary judgment to Lieutenant Pam Hodges and Sergeant Donald Newsome, officers at the Wakulla County Jail in Florida.  Kenneth Weinberg, whose death is unrelated to this appeal, was a pretrial detainee at the jail for approximately twenty months.  Weinberg commenced this civil rights suit under the Due Process Clause of the Fourteenth Amendment, claiming deliberate indifference to his basic medical needs because the officers refused to provide him with batteries for his hearing aids, rendering the aids worthless and leaving him unable to hear.  He also brought a claim under the Americans with Disabilities Act ("ADA") and a First Amendment retaliation claim against the officers for the same conduct.  The district court granted summary judgment to the officers, resolving the deliberate indifference claim on the basis of qualified immunity.

After thorough review and oral argument, we affirm.  Because the significant hearing loss alleged by Weinberg both is a serious medical need and could have been effectively treated with the use of hearing aids, we now hold that Weinberg stated a viable constitutional claim.  An uncorrected, substantial inability to hear, much like an inability to see effectively without the aid of a corrective medical device, may place an inmate at risk of serious harm and substantially interfere with the inmate's ability to function in a penal environment.  This

2

holding, however, was not clearly established at the time of the alleged

constitutional violations -- not by this Court, not by the Florida Supreme Court, nor

finally by the United States Supreme Court.  Thus, because the state of the law did

not provide the officers with "fair warning" that their alleged conduct was

unlawful, the officers are entitled to qualified immunity.  Hope v. Pelzer, 536 U.S.

730, 741 (2002); Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en

banc).  Moreover, we can discern no error in the entry of final summary judgment

for the officers on Weinberg's other claims.  Accordingly, we affirm the judgment

of the district court in all respects.

## I.

## A.

Because this is an appeal from an entry of summary judgment, we view the

evidence in the light most favorable to the nonmoving party, here the Plaintiffs.

See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  Viewing the record

in this light, the essential facts are these.

Kenneth Weinberg was a pretrial detainee at the Wakulla County Jail during

parts of 2003, 2004, and 2005.  More precisely, he was incarcerated from April 27,

2003, until October 29, 2004, and then again from May 12, 2005, until July 8,

2005.  In all, he spent some twenty months in the jail.  Lieutenant Pam Hodges was

the medical supervisor of the jail at the time, and Sergeant Donald Newsome was a

corrections officer.  The jail had a policy of not providing inmates with hearing aid batteries.  Rather, inmates were allowed to bring them into the jail or have them sent in by family or friends.

Weinberg's medical history indicates that he suffered from hearing loss and that he wore hearing aids to correct the problem.  On August 27, 2002, before Weinberg's time in the Wakulla County Jail, an audiologist, Dr. Gordon Stanfield, evaluated his hearing.  The examination results found "[t]his patient has a mild to moderately severe bilateral sensorineural involvement.  Discrimination is fair to good at higher levels.  This loss would interfere in all communication except face to face in quiet."  The doctor noted that "binaural amplification is strongly recommended."  (emphasis added).  According to Weinberg's declaration, "[u]pon his arrest he supplied the medical department a copy of the test results, so the medical department would see that [he] had a hearing loss and hoped that the medical supervisor Pam Hodges would supply the hearing aid batteries [he] had requested."  While in jail, Weinberg received a medical history and physical assessment on April 29, 2003, which listed his hearing as "poor."  On June 3, 2003, Weinberg listed his "hearing difficulties" on a medical screening questionnaire.  He received another medical history assessment on June 16, 2003, which described his hearing as "HOH" [hard of hearing].  The second page of this form noted that he "wears hearing aid[s]."

4

During some two years in the jail, Weinberg repeatedly asked jail officials both orally and in writing for hearing aid batteries. Each request was denied. According to his declaration, "[f]rom August through October of 2004, [Weinberg] filed numerous request and grievances in an effort to receive the batteries for his hearing aids." "[Weinberg] explained to defendants, Hodges [and] Newsom[e] . . . that it was extremely important to get the batteries for his hearing aids since he had filed motions in the court to represent himself pro se on very serious felony charges." On September 9, 2004, Weinberg submitted an "Inmate Sick Call Request," stating that "I need 4 batterys [sic] for my hearing aids. I need them soon I have to go to court." Jail personnel responded that "[w]e do not supply batteries." Weinberg submitted still another request on September 13, 2004: "This is my 3rd request in 2 wks, for batteries for my hearing aid. I have to go to court on the 15th and will need to be able to hear the judge. I will ask the judge to order you to do this if I have to." Defendant Hodges offered the same response: "[w]e do not supply hearing aid batteries." On October 11, 2004, Weinberg filed a "Detainee Grievance," which stated:

> On 10/11 filled out request for batteries for hearing aids I need this for Court on 10-13-04 I have filled out 4 medical slips and request forms in the last 2 mo. I am representing myself in court and can't hear the judge. I have tried to get them sent in but have been told by Sgt. Newsom that I have to get them through medical, and medical will not get them.

5

Again, Hodges responded that "[w]e do not supply hearing aid batteries to inmates."

Defendant Newsome denied Weinberg's verbal and written requests for batteries numerous times, telling Weinberg that he would "have to get them through medical." Weinberg also asked Newsome to look through his property to see if there were any hearing aid batteries included, but Newsome would not do so without the medical department's direction. Weinberg claimed that Newsome advised him that hearing aid batteries were a security risk and, therefore, that his friends and family would not be allowed to send or bring them into the jail.

Thus, Plaintiffs allege that the conduct of Hodges and Newsome completely deprived Weinberg of hearing aid batteries, and Weinberg went without functioning hearing aids for the approximately twenty months he was housed at the jail. According to Weinberg's declaration, without functioning hearing aids he "was not able to adequately participate in church services held in the county jail . . . ." He "was unable to hear the TV for over two years-, he understood less tha[n] 100 words during that time period." He "was unable to adequately communicate with his attorney in private because if counsel spoke in a quiet tone plaintiff could not hear him." At "court hearings . . . he only heard approximately 50% of the words said by the Judge, the State, and the witnesses." Weinberg claimed he "could not adequately communicate with the court, the other prisoners

6

or correctional officers.  ALL communication had to be face to face in quiet."

"[I]n pretrial hearings, depositions and exhibit exchanges . . . [Weinberg] could not

hear much of the conversation, testimony and [argument] by the state.  Many times

[Weinberg] left the courtroom not knowing what the court[']s ruling was."

"[D]uring an important suppression hearing . . . [Weinberg] could only hear a

small portion of the State[']s proffer of expected testimony of numerous witnesses

. . . [and he] was not able to adequately assist his attorney by advising him during

the hearing . . . ."  In proceeding pro se, Weinberg claimed that his "case hinged on

taped phone calls and recorded statements of alleged witnesses," but he "could not

hear or understand well enough to prepare and the defendants continued to deny

plaintiff[']s request for hearing aid batteries."

### B.

Weinberg filed, pro se, an amended complaint under 42 U.S.C. § 1983 in the

United States District Court for the Northern District of Florida.  Weinberg's

amended complaint asserted a violation of the Fourteenth Amendment Due Process

Clause, claiming that Hodges and Newsome were deliberately indifferent to his

serious medical needs.  When brought by convicted prisoners, these claims proceed

under the Cruel and Unusual Punishment Clause of the Eighth Amendment.

Pretrial detainees, however, must proceed under the Due Process Clause of the

Fourteenth Amendment.  See Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 n.6

7

(11th Cir. 1997). As we have previously explained, however, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner, and thus we analyze the claim under the decisional law of both amendments. See Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007).

The complaint also alleged that the officers' conduct violated Title II of the Americans with Disabilities Act (specifically, 42 U.S.C. § 12132),[1] the First Amendment, and the Fourteenth Amendment's Equal Protection Clause. Weinberg initially raised these claims against Hodges, Newsome, and a third officer, Maurice Langston, in both their official and individual capacities. Weinberg later conceded that he could not maintain an official capacity suit against any of the defendants; he also voluntarily dismissed the claims against Langston. Thus, this appeal involves only claims lodged against Hodges and Newsome in their individual capacities.

The officers jointly moved the district court for summary judgment. After full briefing, the magistrate judge issued a Report and Recommendation, which

---

[1] The statute provides in full:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (2006).

8

recommended that the district court grant the officers' motion on all claims. The magistrate judge concluded that Weinberg's deliberate indifference claim failed for lack of factual support and because Weinberg did not state a serious medical need. Weinberg's ADA claim failed because, according to the magistrate judge, 42 U.S.C. § 12132 does not provide for individual liability. Finally, his First Amendment claim failed because there was no evidence showing that the officers were aware of any protected First Amendment activity on Weinberg's part -- Weinberg claimed the officers were retaliating against him for complaints he made about the quality of medical care provided to another inmate -- or any causal connection between such protected activity and the officers' refusal to provide Weinberg with hearing aid batteries.

Weinberg timely objected to the Report and Recommendation. He acknowledged that he could not make out an ADA claim against the officers in light of the authority cited by the magistrate judge. On de novo review, the district court adopted the Report and Recommendation as the opinion of the court on all claims except for deliberate indifference. As for that claim, the district court rejected the magistrate judge's conclusion that Weinberg failed to state a deliberate indifference claim or marshal facts sufficient to send the matter to a jury. The district court reasoned that a substantial hearing loss that could be remedied with a hearing aid may amount to a serious medical need, and that Weinberg had

9

sufficiently demonstrated a disputed issue of material fact about whether that was the case here. Nonetheless, the district court granted summary judgment to the officers on the deliberate indifference claim on account of qualified immunity because neither the Supreme Court nor this Court had held that depriving an inmate of hearing aids amounted to deliberate indifference to a serious medical need. Thus the officers' conduct did not violate clearly established law.

Weinberg timely appealed, and we appointed counsel to represent him on appeal. A few months later, Weinberg passed away, and this Court allowed the substitution of Weinberg's daughters, Tonya Weinberg Gilmore and Juanita Weinberg Prince, as Appellants.

## II.

## A.

We review de novo the grant of summary judgment on qualified immunity grounds, drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party. See West v. Tillman, 496 F.3d 1321, 1326 (11th Cir. 2007); Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. See Pearson v. Callahan, 555 U.S. 223, 231 (2009); Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184

(11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee, 284 F.3d at 1194 (citation omitted) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. See id.

"Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting Lee, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Pearson, 555 U.S. at 232. In this case, there is no dispute that Hodges and Newsome were acting in their discretionary capacities. The Supreme Court recently has made it clear that we need not employ a rigid two-step procedure, but rather may exercise our discretion to decide "which

11

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.

In order to clarify the law for future cases, we begin with the first prong, although we could resolve the case on the second prong alone. We do so for several reasons. In the first place, as the Supreme Court explained in Pearson, although addressing the first prong of the qualified immunity inquiry is no longer required, it is nonetheless "often appropriate" and "often beneficial," particularly "with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." Id. We are plainly confronted with such a question here. A claim of deliberate indifference to a serious medical need in violation of the Eighth or Fourteenth Amendments necessarily arises only where the plaintiff is incarcerated, and a qualified immunity defense is generally available to the public official or officials against whom the plaintiff brings suit. While a qualified immunity defense is not available when a plaintiff seeks prospective injunctive relief, see id. at 242-43, the nature of a deliberate indifference to serious medical needs claim is such that an inmate will almost always be seeking damages to remedy claimed past injuries caused by the official's failure to provide the inmate with constitutionally adequate medical care. Thus, we see precious little reason to delay the resolution of the constitutional question until a later date, since any later case raising this question will almost surely be decided in the same

12

context of qualified immunity.  As we see it, addressing the first prong of qualified immunity in this case "promotes the development of constitutional precedent," id. at 236, and has the salutary effect of giving clear guidance to those officials entrusted with the important charge of providing medical care to incarcerated individuals.

Moreover, the constitutional question at the heart of this case -- whether a substantial hearing impairment that can be remedied by a hearing aid may amount to a serious medical need for purposes of the Eighth or Fourteenth Amendments -- is a relatively straightforward legal question that we are well equipped to resolve. Although future cases will surely involve factual disputes about whether a particular inmate's hearing impairment is severe enough or poses a substantial enough risk of harm to amount to a serious medical need, or whether a hearing aid actually can remedy the inmate's severe impairment, or indeed whether an official is aware of the inmate's condition, we can provide guidance to courts and officials down the road by answering today the threshold constitutional question of whether a substantial hearing impairment that can be remedied by a hearing aid may present a serious medical need.  In addition, at oral argument, the Defendants conceded that Weinberg had presented evidence sufficient to allow a jury to decide whether he suffered from serious, treatable hearing loss that was intentionally ignored by Hodges and Newsome.  The straightforward question, then, is whether an officer's

13

refusal to treat such hearing loss can give rise to a claim for deliberate indifference. We exercise our discretion to address that question today.

B.

"To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)). This analysis contains both an objective and a subjective component. See Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). A plaintiff must first show an objectively serious medical need that, if unattended, posed a substantial risk of serious harm, and that the official's response to that need was objectively insufficient. See Bingham v. Thomas, 654 F.3d 1171, 1175-76 (11th Cir. 2011). Second, the plaintiff must establish that the official acted with deliberate indifference, i.e., the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence. See id.; Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

First, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Youmans, 626 F.3d

14

at 564 (quoting Mann, 588 F.3d at 1307). "In general, serious medical needs are those 'requiring immediate medical attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1190 (11th Cir. 1994)).

Second, to prove "deliberate indifference" to a serious medical need, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original) (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)). "Under section 1983 'knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.'" Carswell v. Bay Cnty., 854 F.2d 454, 457 (11th Cir. 1988) (quoting Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)); see also Bingham, 654 F.3d at 1176 ("A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference."). The district court found, and at oral argument Defendants conceded, that there was sufficient record evidence of deliberate indifference to a serious medical need to send that question to a jury. As the district court framed the issue:

> [S]ometimes a hearing loss is a serious medical need that can be remedied with a hearing aid. Whether that was so here, and whether the defendants Newsom and Hodges were deliberately indifferent to that need, are disputed issues of fact. I reject the defendants' assertion

15

that Mr. Weinberg has not asserted a claim on this basis. And I reject the assertion that Mr. Weinberg has not provided factual support for the claim that would be sufficient -- but for qualified immunity -- to go to a jury.

Weinberg v. Hodges, 4:09-cv-202-RH-WCS, 2011 WL 1233486, at *2 (N.D. Fla. Mar. 31, 2011). Put differently, if this evidence was credited by the jury, it could give rise to a claim under the Due Process Clause of the Fourteenth Amendment. In light of the Defendants' concession, we have no occasion to address whether or not these facts were enough to establish deliberate indifference to Weinberg's serious medical need.

In this Circuit, we have not previously addressed the question of whether severe, treatable hearing loss amounts to an objectively serious medical need. We have, however, long held that deprivation of needed eyeglasses or prosthetic devices stated an Eighth Amendment violation because the unavailability of eyeglasses or prostheses may lead to "severe harm." Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974);[2] see also Farrow v. West, 320 F.3d 1235, 1243-44 (11th Cir. 2003) ("In certain circumstances, the need for dental care [including dentures] combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm.").

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

16

We can find precious little case law addressing an official's failure to supply a severely hearing impaired inmate with hearing aids.  Three of our sister circuits, however, have recognized that severe hearing loss may be a serious medical need for the purpose of the Eighth or Fourteenth Amendments -- albeit in unpublished opinions.  See Cooper v. Johnson, 255 F. App'x 891, 892 (5th Cir. 2007) (unpublished) (citing Newman, 503 F.2d at 1331) (vacating district court's dismissal of prisoner's complaint as frivolous, because prisoner's allegations that officials refused to provide him with a hearing aid were "sufficient to raise a nonfrivolous issue regarding whether the provision of a hearing aid is a serious medical need and whether the respondents were deliberately indifferent to this need"); Wheeler v. Butler, 209 F. App'x 14, 15 (2d Cir. 2006) (unpublished) (vacating district court's grant of summary judgment and remanding for further proceedings because "the District Court erred in failing to consider whether the deprivation of Wheeler's hearing aids could, in and of itself, amount to cruel and unusual punishment"); Large v. Wash. Cnty. Det. Ctr., 915 F.2d 1564 (4th Cir. 1990) (table) (unpublished) (citing Newman, 503 F.2d at 1331) (remanding to district court to consider in the first instance deliberate indifference claim based on defendant's failure to provide plaintiff with a hearing aid, noting that although there was "no specific authority dealing with the refusal to provide hearing aids as a possible eighth amendment violation, there is ample authority recognizing that

17

the failure to provide comparable basic corrective/medical devices may amount to deliberate indifference to a serious medical need"); see also Hicks v. Keller, No. 11-CV-0422-WJM-KMT, 2012 WL 1414935, at *4 (D. Colo. Apr. 24, 2012) ("Plaintiff's allegations of intentional deprivation of his hearing-aid, a necessary medical devi[c]e, sufficiently state a claim that Defendant Nelson was deliberately indifferent to Plaintiff's serious medical needs.").

We agree with this view, and find the analogy to the holding in Newman persuasive. The ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly requires medical treatment by a physician. Indeed, Weinberg's audiologist evaluated him and diagnosed him with hearing loss that would "interfere in all communication except face to face in quiet" and "strongly recommended" amplification in both ears. Cf. Mann, 588 F.3d at 1307 ("A serious medical need is 'one that has been diagnosed by a physician as mandating treatment . . . .'" (quoting Hill, 40 F.3d at 1187)). Jail assessments repeatedly noted his hearing was "poor" or "HOH" [hard of hearing]. He "was unable to hear the TV for over two years," and "he understood less tha[n] 100 words during that time period." Weinberg's evidence allows inferences that he could have had trouble hearing a fire or other alarm, responding to commands issued by guards, and reacting to a fight behind him or to prisoners threatening his safety. Much like the inability to see, an inmate's inability to hear may render him

18

exceedingly vulnerable to danger and harm from his unperceived surroundings. See Koehl v. Dalsheim, 85 F.3d 86, 87-88 (2d Cir. 1996) (inmate's unmet need for prescription eyeglasses constituted a serious medical condition where the inmate suffered headaches, his vision and depth perception deteriorated, and his visual deficiencies caused him to fall or walk into objects). Although Weinberg did not allege that his hearing loss caused him physical pain, other inmates with hearing loss have alleged that the deprivation of hearing aids caused them pain and interfered with their ability to sleep. See Cooper, 255 F. App'x at 891. It takes no great leap of logic to suggest that nearly two years of isolation caused by untreated hearing loss could do serious harm to physical and mental health.

After all is said and done, the inability to hear "means the loss of the most vital stimulus -- the sound of the voice that brings language, sets thoughts astir and keeps us in the intellectual company of man."[3] Substantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need.

Moreover, for purposes of qualified immunity, we have little difficulty concluding that the evidence allows the inference that the officers' response to Weinberg's medical need was objectively insufficient, that the officers acted with deliberate indifference, and that their actions caused Weinberg's harm. At this

---

[3] Helen Adams Keller, Helen Keller in Scotland: A Personal Record Written by Herself 68 (James Kerr Love, ed., 1933) (opining that for this reason deafness "is a much worse misfortune" than blindness).

19

stage in the proceedings, the evidence, if credited, was sufficient to establish that Hodges and Newsome knew of Weinberg's hearing impediments based on his medical records and the numerous medical grievances he filed, yet they repeatedly refused to provide him with hearing aid batteries that easily would have corrected the problem, while they also prevented him from obtaining batteries from his family.  See Carswell, 854 F.2d at 457 ("Under section 1983 'knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.'" (quoting Ancata, 769 F.2d at 704)).

We caution again, however, that not all hearing loss amounts to a serious medical condition.  "Our precedent recognizes a range of medical needs that are sufficiently serious to constitute 'serious medical needs' for purposes of the Eighth Amendment and some medical needs that are not."  Farrow, 320 F.3d at 1243; see also id. at 1244 ("We are not saying that merely having few or no teeth and a definite need for dentures per se constitutes a serious medical need in each case."). Like we did in Farrow, the Second Circuit has observed that "not all claims regarding improper dental care will be constitutionally cognizable.  Dental conditions, like other medical conditions, may be of varying severity."  Chance v. Armstrong, 143 F.3d at 702; see also id. ("A prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery. But if prison

20

officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment."). So too with hearing loss. Thus, for instance, if a plaintiff can "carry on a normal conversation" and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need. Chacon v. Ofogh, No. 7:08-cv-00046, 2008 WL 4146142, at *4 (W.D. Va. Sept. 8, 2008); see also Irby v. Sumnicht, 683 F. Supp. 2d 913, 915-16 (W.D. Wis. 2010) (granting summary judgment to defendant where inmate plaintiff already had one functioning hearing aid and presented no evidence to support his claim that the denial of a second hearing aid caused him pain, interfered with his daily activities, or subjected him to a substantial risk of harm); Smith v. Masterson, 538 F. Supp. 2d 653, 659 (S.D.N.Y. 2008), aff'd, 353 F. App'x 505 (2d Cir. 2009) ("While the ability to hear is 'a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians,' this record has established that [an inmate] has normal hearing and was not in need of the hearing aids he inappropriately received, nor any other accommodations." (quoting Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 412 (S.D.N.Y. 2006))).

Similarly, not all hearing loss that amounts to a serious medical condition can be remedied with a hearing aid, and thus an official could hardly be faulted for

21

failing to provide an inmate with a hearing aid in that circumstance. And even if an inmate has a substantial hearing loss that can be remedied with a hearing aid, an official may not be aware of the inmate's condition or its extent, and could not be found to act with deliberate indifference. Whether Weinberg's hearing loss amounted to a serious medical condition and whether the officers were aware of the extent of Weinberg's hearing loss were all factual issues placed in dispute. However, as the district court found, and as the parties now agree, Weinberg presented enough evidence to state a claim for deliberate indifference to a serious medical need.

## III.

Nonetheless, qualified immunity protects "all but the plainly incompetent or one who is knowingly violating the federal law." Lee, 284 F.3d at 1194 (quoting Willingham, 261 F.3d at 1187). In order to overcome the officers' qualified immunity defense, the Plaintiffs must also show that the asserted constitutional right "was clearly established such that a reasonable official would understand that what he is doing violates that right." Coffin, 642 F.3d at 1013 (quoting Bashir v. Rockdale Cnty., 445 F.3d 1323, 1327 (11th Cir. 2006)). A constitutional violation may be clearly established either by similar prior precedent, or in rare cases of "obvious clarity." With either method, the touchstone is whether the right would be apparent to a reasonable officer.

22

Under the first approach, we look only to binding precedent -- holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the events took place.  See Amnesty Int'l, 559 F.3d at 1184. "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law."  Coffin, 642 F.3d at 1013.

The Plaintiffs claim that the officers had fair notice that failing to provide Weinberg with hearing aid batteries was unconstitutional, because precedents from this Court have held that the deprivation of a medical device necessary to remedy a serious medical condition violates the Constitution.  See Farrow, 320 F.3d at 1246-48 (dentures); Newman, 503 F.2d at 1331 (eyeglasses and prostheses).  The problem with the Plaintiffs' position is that it is stated far too generally and at a very high order of abstraction.  The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Coffin, 642 F.3d at 1013 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).  An official's awareness of an abstract right "does not equate to knowledge that his conduct" may infringe that right.  Id. at 1015 (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)).

Hearing loss that can be remedied with a hearing aid has never previously been held to be a serious medical need by the Supreme Court, this Court, or the

23

Florida Supreme Court.  Plaintiffs point to Newman v. Alabama, in which the former Fifth Circuit recognized that "the unavailability of eyeglasses and prosthetic devices" can cause severe harm, and thus amounted to a deprivation of adequate medical treatment in violation of the Eighth Amendment.  503 F.2d at 1331.  But Newman would not have made the constitutional violation in this case apparent to a reasonable officer.  In Newman, inmates brought a class action challenging the general quality of medical care dispensed to inmates throughout the Alabama Penal System.  Id. at 1322-25.  The plaintiff class sought only declaratory and injunctive relief addressing unsafe conditions.  This Court listed the lack of adequate eyeglasses and prosthetic devices among other indications of inadequate systemic care, alongside insufficient staffing, shortages in drugs and medical equipment, and unsanitary conditions.  Id. at 1331-32.  Our statements about eyeglasses and prostheses were brief, conclusory, and did not contain any context or specifics.  Thus, we cannot say Newman truly compelled "the conclusion for all reasonable, similarly situated public officials that what Defendant[s] [were] doing violated [Weingberg's] federal rights in the circumstances."  Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 (11th Cir. 2001) (en banc), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also Reichle v. Howards, 132 S. Ct. 2088, 209 (2012) ("To be clearly

24

established . . . 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011)).

Moreover, we have stated time and again that "officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Coffin, 642 F.3d at 1015 (quoting Adams v. St. Lucie Cnty. Sheriff's Dep't, 962 F.2d 1563, 1575 (11th Cir. 1992) (Edmondson, J., dissenting), approved en banc, 998 F.2d 923 (11th Cir. 1993) (per curiam)); Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002) (same); Rodriguez v. Farrell, 280 F.3d 1341, 1350 (11th Cir. 2002) (same); Lassiter v. Ala. A&M Univ., Bd. of Trs., 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (same), abrogated on other grounds by Hope, 536 U.S. at 739 & n.9; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (same). Though we now hold that significant and substantial hearing loss that can be remedied by a hearing aid is a serious medical need, our preexisting case law did not provide Defendants with fair warning that their actions violated Weinberg's constitutional rights. While vision and hearing impairments each can cause substantial harm, the nature of those harms and the capacity to discern them may not be the same. A finding that vision impairment may give rise to a serious medical need does not lead ineluctably to the same answer for hearing loss.

25

Similarly, Farrow, which involved a failure to provide adequate dental care, including dentures, that led to "pain, weight loss, bleeding gums, and soft diet," found "a serious risk of harm" much different in kind from the dangers of untreated hearing loss. 320 F.3d at 1246. "We have noted that it would be inappropriate to hold government officials to a higher level of knowledge and understanding of the legal landscape than [that] displayed by judges whose everyday business it is to decipher the meaning of judicial opinions." Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1274 (11th Cir. 2000) (citing Barts v. Joyner, 865 F.2d 1187, 1194 (11th Cir. 1989)). Amidst uncertainty, "officials are not required to err on the side of caution." Marsh, 268 F.3d at 1030 n.8. For the purposes of qualified immunity, it would not have been obvious to a reasonable officer that our prior case law inevitably compelled the answer we reach today.

The Plaintiffs' reliance on unpublished case law drawn from other circuits and from the district courts is unavailing, because only binding precedent can clearly establish a right for qualified immunity purposes. See Amnesty Int'l, 559 F.3d at 1184. Thus, without any prior binding case law classifying hearing loss that can be remedied with a hearing aid as a serious medical need, we cannot say that the state of the law put Hodges and Newsome on fair notice that their failure to provide Weinberg with hearing aid batteries was unlawful.

26

Nor is this a case where the officers' conduct "so obviously violates the constitution that prior case law is unnecessary." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). Obvious clarity cases are "rare," Coffin, 642 F.3d at 1015, and present a "narrow exception" to the general rule of qualified immunity, Lee, 284 F.3d at 1199. These obvious clarity cases take two forms. First, a broad statement of legal principle announced in case law may be sufficient if it establishes the law "'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Alternatively, obvious clarity is recognized if the conduct is "so bad that case law is not needed to establish that the conduct cannot be lawful." Id. at 1350.

Plaintiffs do not point to any general principle announced in Eleventh Circuit, U.S. Supreme Court, or Florida Supreme Court case law that clearly applies to the failure to provide hearing aid batteries. (Nor indeed has any circuit court of appeals ever held in a published opinion that substantial hearing loss amounts to a serious medical need for purposes of deliberate indifference qualified immunity analysis.) While this Court recognized a violation when inmates were deprived of dentures in Farrow and eyeglasses and prostheses in Newman, these

27

cases stopped short of stating a general principle applicable to all medical devices, including hearing aids.  The first obvious clarity exception does not apply.

Equally inapplicable here, the second obvious clarity exception is relevant only when conduct is so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality.  Failing to provide an inmate with hearing aid batteries comes nowhere close to the depraved, inhumane treatment in cases like Lee v. Ferraro, where we denied qualified immunity to a police officer on a Fourth Amendment excessive force claim because the officer's "plainly excessive" and "wholly unnecessary" conduct -- taking a fully secured and handcuffed arrestee to the back of her car and then slamming her head against the trunk -- was "objectively unreasonable and clearly unlawful."  284 F.3d at 1198, 1200; see also Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (even without preexisting case law directly on point, an officer was not entitled to qualified immunity where he ordered and allowed his dog to attack and bite the fully subdued plaintiff for at least two minutes and threatened to kill the plaintiff when the plaintiff kicked his dog in an effort to resist the unprovoked attack).

This Court has often been reluctant to reject qualified immunity for deliberate indifference to medical need claims that "are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed

28

to a government official and to the constitutional adequacy of what was done to help and when." Bozeman v. Orum, 422 F.3d 1265, 1274 (11th Cir. 2005). "Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." Id.; see, e.g., Andujar, 486 F.3d at 1205 (no obviously clear violation when paramedic who treated a man's dog bite wounds failed to transport him to a hospital for further treatment).

Finally, Plaintiffs cite to provisions of the Florida Administrative Code in an effort to clearly establish that the officers' treatment of Weinberg was unconstitutional. See Fla. Admin. Code R. 33-210.201(7)(a)(1) ("A physician or clinical associate shall prescribe and approve health care appliances for eligible inmates if these devices meet medical necessity, safety, and security requirements. Health care appliances include orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs, hearing aids, and other items which are necessary to accommodate the inmate's needs." (emphasis added)). Even if we were to assume that this regulation, on its own, could clearly establish a matter of constitutional law for qualified immunity purposes -- a proposition we highly doubt -- the argument is a nonstarter here. This regulation was promulgated by the Florida Department of Corrections to govern state prisons' compliance with the Americans with Disabilities Act. See id. R. 33-210.201(1); see also Fla. Stat. § 944.09 (giving the Florida Department of Corrections the authority to promulgate

29

rules to implement its statutory mandate, including rules relating to the rights of inmates and the furnishing of health and comfort items to prisoners).  Weinberg was a detainee at the Wakulla County Jail, which is not a prison and is regulated by the county, not the state department of corrections.  Quite simply, this state regulation in no way governed the conduct of Hodges or Newsome at a county jail, and it could not have put them on fair notice that their conduct was unlawful.  Because Weinberg's right to a functioning hearing aid was not clearly established at the time of the alleged violations, Hodges and Newsome are entitled to qualified immunity.

## IV.

The Plaintiffs also say that the district court erred in granting summary judgment to the officers on Weinberg's Americans with Disabilities Act claim.  The Plaintiffs do not challenge, however, the district court's conclusion that summary judgment was warranted on the claim arising under 42 U.S.C. § 12132.  Rather, their contention is that the district court, in evaluating Weinberg's pro se complaint, somehow should have taken Weinberg's failed ADA claim and his failed First Amendment retaliation claim and alchemized them into a single claim brought under the ADA's anti-retaliation provision.  See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

30

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").

We are unpersuaded. The law is clear that pro se pleadings are held to a less demanding standard than counseled pleadings and should be liberally construed. See, e.g., Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). But liberal construction is not the same thing as wholesale redrafting. The district court committed no error by treating Weinberg's ADA and First Amendment retaliation claims as two distinct claims, and, again, the Plaintiffs have not challenged the district court's determination that each separate claim failed on the merits. Nor did the district court misapprehend the nature of Weinberg's claims. Instead, the court construed them exactly as they were pled. As for the sole ADA claim, the magistrate judge concluded that individual liability was not available under 42 U.S.C. § 12132. Rather than protest that he was not proceeding under section 12132 or that the magistrate judge misconstrued his claim, Weinberg conceded that he was proceeding under Title II of the ADA and that the case law cited by the magistrate judge foreclosed his ADA claim. Weinberg also acknowledged that he could not maintain a First Amendment retaliation claim. The district court adopted the Report and Recommendation as its opinion on these claims. And we can discern

31

no basis for reviving and completely recasting on appeal claims that Weinberg himself acknowledged lacked merit.

V.

We hold that a pretrial detainee who suffers from substantial hearing loss that may be remediated by a hearing aid may state a claim for deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment if an officer on notice intentionally ignores the untreated condition. Not all hearing loss is a serious medical need, not all hearing loss creates a substantial risk of harm, not all hearing loss can be remediated by a hearing aid, and not all officials will know of an inmate's condition or its extent. However, accepting Defendants' concessions, Weinberg sufficiently established at the summary judgment stage that his substantial hearing loss was a serious medical need, and that Hodges and Newsome were aware of his condition and refused to provide him with the hearing aid batteries he needed to be able to hear. Thus, put differently, Weinberg's account would have been enough to take that issue to a jury. But in the absence of any clearly established law on the matter, the officers were nonetheless entitled to qualified immunity, and the judgment of the district court is therefore

**AFFIRMED**.

32