**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2019[*]
Decided June 3, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-3240

| | |
|---|---|
| DAVID M. JONES, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:17-cv-00257-WTL-MJD |
| DUANE ALSIP, *et al.,* <br> *Defendants-Appellees.* | William T. Lawrence, <br> *Judge.* |

**O R D E R**

After prison officials confiscated the battery charger for his hearing aid because he had tampered with it, David Jones, an Indiana inmate, sued them for violating disability-discrimination statutes and the Eighth Amendment. The district court entered summary judgment for the defendants. Because a reasonable trier of fact could not find that the defendants denied Jones any service, program, or activity because of a

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

disability or that they deliberately disregarded a substantial risk of serious harm to him, we affirm.

Before arriving at Pendleton Correctional Facility, Jones received a hearing aid for the partial hearing loss in his left ear. At Pendleton, when he was sent to segregation for possessing contraband, an officer collected and inventoried his belongings, following the prison's policy. The officer found a charger for Jones's hearing aid that had been tampered with, and he confiscated it as more contraband. Prison officials believe that Jones was using the charger to power a tattoo-gun motor found next to it. Jones says that the charger was broken and that he altered it merely to repair it. When Jones returned from segregation, he did not get his charger back. He acknowledges that, even without his charged hearing aid, his hearing loss never prevented him from participating in a prison-run program, such as various classes that the prison offered to prisoners. Jones left a GED program when he entered segregation, but he says that, even without his hearing aid, he could pursue his diploma after he returned to the general population.

Jones sued the Indiana Department of Corrections and several prison officials who were responsible for retaining his charger. He alleges that, by refusing to return his charger, they violated his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12165, Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701–796l, and the Eighth Amendment.

The defendants moved for summary judgment, which the district court granted. They argued first that Jones's statutory claims failed because, according to his prison doctor, he did not have a hearing disability, and because he was not denied the benefits of the services, programs, or activities of a public entity. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794. Second, they argued that Jones's constitutional claim could not succeed because his partial hearing loss was not a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Bypassing the statutory question whether Jones is disabled, the district court ruled that a jury could not find that the prison denied Jones any benefits because of a disability. The court also ruled that the Eighth Amendment claim lacked merit because Jones "fail[ed] to show that his left ear hearing is a serious medical need," that his "hearing loss pos[ed] a substantial risk of harm to him," and that any defendant knew of his hearing problems.

On appeal, Jones argues that his claims should have survived summary judgment. First, he contends that the district court wrongly disposed of his statutory disability-discrimination claims because, by retaining his charger, the defendants failed to provide him with "means of access to medical services that a doctor has already

determined he needs." A state prison can be liable for denying a prisoner the benefits of medical services by reason of the prisoner's disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). But Jones could not establish liability at a trial because the record does not suggest that the prison kept the charger from him because of a disability. Prison officials withheld his charger because they believed he was using it for tattooing, and Jones does not argue—let alone point to evidence suggesting—that this reason was pretext for discrimination based on a disability. Without such evidence, his claims under the statutes fail. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

Next, Jones contends that the district court prematurely rejected his Eighth Amendment claim. To defeat the motion for summary judgment, Jones needed to present evidence that the defendants recklessly endangered him by deliberately disregarding a serious medical issue. *See Farmer*, 511 U.S. at 835; *Estelle*, 429 U.S. at 104–05. Jones reasons that whether his hearing loss amounted to a serious medical issue and whether the defendants were aware of his hearing loss are genuinely disputed fact questions. Again, Jones's arguments do not persuade us. First, even if "severe" or "substantial" hearing loss is a serious medical issue, not every hearing impairment is. *Gilmore v. Hodges*, 738 F.3d 266, 275–77 (11th Cir. 2013). "[I]f a plaintiff can carry on a normal conversation and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." *Id.* at 276–77 (internal quotation marks and citation omitted). That describes Jones's situation. Jones admitted that he could complete the GED and other programs without his hearing aid, and he did not contradict his prison doctor who said that he does not have a hearing disability. Second, nothing in the record supports a finding that the defendants recklessly ignored a risk of harm to Jones. No evidence suggests that the defendants prevented Jones from acquiring a new charger, that they have reason to think that he cannot easily acquire one himself, or that they know that, without a charger, his well-being is seriously jeopardized.

Jones replies that the absence of his charger exposes him to "danger and harm from his unperceived surroundings." He tells us that he was once hit by a basketball because he could not hear other inmates' warnings to duck. Jones did not present this argument to the district court, so we need not consider it. *See Walker v. Groot*, 867 F.3d 799, 802 (7th Cir. 2017). He mentioned the basketball incident in an affidavit attached to his response to the motion for summary judgment, but he never argued its significance to the district court, and courts need not scour the record to piece together arguments for litigants. *Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013). In any event, this evidence does not change our analysis. As we have just explained, no evidence suggests that the defendants who confiscated his charger knew about this incident (or anything

like it) or that they thought that Jones could not himself readily obtain another charger to avoid such problems. Without evidence of a culpable state of mind, summary judgment on the Eighth Amendment claim was proper. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

                                                                                         AFFIRMED