[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14324

————————————————

D.C. Docket No. 2:14-cv-00173-RWS

RICKY J. JOHNSON,

Plaintiff-Appellee,

versus

ANDREW FEE,
LARRY HUGHES,

Defendants-Appellants.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(December 9, 2020)

Before GRANT and MARCUS, Circuit Judges, and AXON,[*] District Judge.

AXON, District Judge:

---

[*] Honorable Annemarie C. Axon, United States District Judge for the Northern District of Alabama, sitting by designation.

Ricky Johnson filed this civil rights lawsuit against Lieutenant Andrew Fee and Sergeant Larry Hughes, officers at the Forsyth County Detention Center in Georgia, claiming that they were deliberately indifferent to his serious medical need by transferring him out of the Detention Center just one day before his scheduled hernia surgery. The district court denied Fee and Hughes summary judgment, finding that they were not entitled to qualified immunity. We reverse and remand.

## I.    BACKGROUND

Between 2010 and 2014, Johnson, a Georgia Department of Corrections inmate, was occasionally housed at the Forsyth County Detention Center in connection with local court proceedings. One of those occasions was in April 2013, ahead of a scheduled state court trial.

Mr. Johnson has suffered from a hernia since 2008. Within days of arriving at the Forsyth County Detention Center, Johnson completed a request for medical attention which stated that his hernia had grown and was "painful all the time." Johnson explained that he was having trouble urinating and defecating.

An off-site consulting surgeon examined Johnson and scheduled laparoscopic surgery for July 12, 2013, at a nearby hospital to repair Johnson's hernia.

2

After the surgical consult, the state court judge presiding over Johnson's criminal case entered an order stating that Johnson "shall not be returned to the [Georgia] Department of Corrections at this time." The order further provided that if the Forsyth County Detention Center decided to house Johnson at another local facility, it had to ensure that Johnson was back at the Forsyth County Detention Center two weeks before his trial.

The Forsyth County Detention Center briefly moved Johnson to another local detention center, but brought him back on July 11, the day before his scheduled hernia surgery. The same day, the Forsyth County Detention Center received the following email from an official at the Georgia Department of Corrections:

> This is authorization to transport on 7/11/13 or 7/12/13 the above inmate from Forsyth County to Augusta State Medical Prison. . . . Please coordinate transportation and security. [Augusta State Medical Prison] is aware of your arrival. Please transport today if possible.[1]

Hughes was not one of the recipients of this email. But as the Forsyth County Detention Center supervisor on duty that morning, Hughes reviewed and signed Johnson's inmate folder and transport checklist for the transfer to Georgia Department of Corrections custody.

---

[1] The parties dispute whether this email is an order requiring the Detention Center to transfer Johnson, or merely an authorization for the Detention Center to transfer him at its option. Resolution of that dispute is unnecessary because it does not affect the analysis or outcome of this appeal.

3

According to Johnson, deputies told him that he was going to his surgical appointment. They instructed him to leave all of his belongings, including his trial preparation materials, in his cell because he would be back the following day. But instead of taking Johnson to his scheduled surgery, the deputies took Johnson to Augusta State Medical Prison, a Georgia Department of Corrections facility.

Johnson did not make it to his July 12 surgery. Four days after he was supposed to have had the surgery, doctors at Augusta State Medical Prison saw him for an "urgent initial" surgical consult for hernia repair. The record contains no information about the result of that consult. Several days later, still without having received any treatment for his hernia, Forsyth County deputies transported Johnson back to the Forsyth County Detention Center.

On July 24, 2013, Johnson filed a grievance about his transfer to Augusta State Medical Prison. Johnson claimed that the transfer was in violation of the state court's order not to return him to Georgia Department of Corrections custody until after his trial, and that the transfer caused him to miss his surgery. He asked for "the name of the person/persons that cancelled my surgery at the hospital [and] approved my transfer or was responsible for my transfer to [the Georgia Department of Corrections] in violation of the court's order."

Fee provided the initial response to the grievance, writing that he would "need said court order to proceed any further." Hughes reviewed Fee's response

4

and signed the grievance form.  Three days later, another Forsyth County

Detention Center officer (who is not a party to this appeal) provided a

supplemental response stating:

> This decision was made by Augusta State Medical Prison.  We sent you there for the procedure you requested to be done.  We did not canc[el] the procedure nor did we know that you were sent back to [the Department of Corrections].  You were supposed to be returned back to us after the procedure was completed [and] you were cleared to come back.  Our medical contractor was not informed of anything.  Augusta State is all I can give you at this time.  You will have to request this information from them.

Johnson's state court trial proceeded as scheduled in August 2013.  He was

found guilty and returned to Georgia Department of Corrections custody.  Johnson

ultimately had surgery to repair his hernia in October 2013 at Augusta State

Medical Prison.  Instead of laparoscopic surgery, the state medical prison physician

performed a more invasive procedure, which Johnson claims resulted in scarring

and other complications that he would not have experienced had he received the

laparoscopic procedure.

## II.    PROCEDURAL HISTORY

Johnson sued Fee and Hughes under 42 U.S.C. § 1983, alleging that they

approved and arranged his transfer to Georgia Department of Corrections custody

one day before his scheduled surgery, in deliberate indifference to his serious

medical need.[2]  Fee and Hughes jointly moved for summary judgment, asserting

that they were entitled to qualified immunity.  A magistrate judge issued a report

recommending that the district court grant Fee and Hughes's motion for summary

judgment based on qualified immunity.  The district court rejected the magistrate

judge's recommendation, found that Fee and Hughes were not entitled to qualified

immunity, and denied their motion for summary judgment.  Fee and Hughes timely

filed this interlocutory appeal, and we appointed counsel to represent Johnson.[3]

## III.    STANDARD OF REVIEW

"We review *de novo* a district court's denial of summary judgment based on

qualified immunity, applying the same legal standards as the district court."

Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013).  This means "we are

required to view the evidence and all factual inferences therefrom in the light most

favorable to the non-moving party, and resolve all reasonable doubts about the

facts in favor of the non-movant."  Feliciano v. City of Miami Beach, 707 F.3d

1244, 1247 (11th Cir. 2013) (quotation marks omitted).

---

[2] Johnson asserted various claims against other Defendants, which the district court dismissed.  Johnson appealed a number of the district court's rulings, but those rulings are not appealable before a final judgment.  Therefore, we dismissed Johnson's appeal for lack of jurisdiction.

[3] We thank counsel for his able representation of Johnson on appeal.

6

## IV.    QUALIFIED IMMUNITY

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008). To establish his entitlement to qualified immunity, an official bears the initial burden of showing that "he was acting within the scope of his discretionary authority." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). If he can make that showing, the burden shifts to the plaintiff to demonstrate that, accepting the facts in the light most favorable to him, the defendant's "conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." Id.

### A.  Discretionary Function

Johnson contends that Fee and Hughes are not entitled to qualified immunity because they were not acting within the scope of their discretionary authority when they transferred him to Georgia Department of Corrections custody in violation of the state court order. An official acts within the scope of his discretionary authority if his actions were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." Estate of Cummings v. Davenport, 906 F.3d 934, 940 (11th Cir. 2018) (quotation marks omitted). "In applying each prong of this test, we look to the general nature of the defendant's

7

action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Mikko v. City of Atlanta, 857 F.3d 1136, 1144 (11th Cir. 2017) (quotation marks omitted).

All of Fee's and Hughes's actions about which Johnson complains were taken pursuant to the performance of their duties and within the scope of their authority. Fee's only action in this case was to file the initial response to Johnson's post-transfer grievance. Hughes's actions were reviewing and signing Johnson's inmate file and transport checklist before the transfer to Augusta State Medical Prison, and then reviewing and signing Fee's initial response to the grievance. Approving and arranging transfers of inmates and responding to inmate grievances are clearly within the scope of a detention center officer's duties and authority.

The general nature of the actions taken by Fees and Hughes establishes that they were acting within their discretionary authority. As a result, the burden shifts to Johnson to establish that, taken in the light most favorable to him, the officers' conduct violated a constitutional right that was clearly established at the time they engaged in it. Alcocer, 906 F.3d at 951.

8

## B. Deliberate Indifference

The Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish that a prison official acted with deliberate indifference, a plaintiff must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Gilmore v. Hodges, 738 F.3d 266, 273–74 (11th Cir. 2013) (quotation marks omitted). The inquiry is both objective and subjective. Id. at 274. The plaintiff must present "evidence of an objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The plaintiff must also show that "the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence." Gilmore, 738 F.3d at 274.

Here, Johnson presented evidence of a serious medical need. One method to establish an objectively serious medical need is to present evidence that a physician has mandated treatment. Farrow, 320 F.3d at 1243. A surgeon recommended and scheduled laparoscopic surgery to be performed within weeks of Johnson's off-site consult. Based on this evidence, a reasonable jury could conclude that Johnson's condition was objectively serious.

9

However, Johnson's constitutional claim fails as a matter of law because there is no evidence in the record that creates a question of fact about whether either Fee or Hughes was deliberately indifferent to Johnson's serious medical need. Johnson claims that Fee and Hughes approved or arranged his transfer to Georgia Department of Corrections custody, delaying the scheduled hernia surgery. But Fee's only involvement in this case was his response to Johnson's post-transfer grievance. And although Hughes reviewed and signed Johnson's inmate transport checklist approving the transfer, there is no evidence that he knew about Johnson's hernia or the scheduled surgery.

Johnson contends the Forsyth County Detention Center's response to his post-transfer grievance shows that Fee and Hughes were responsible for his transfer and that they were aware of his hernia and scheduled surgery before the transfer. He also argues a reasonable jury could infer that Fee and Hughes were aware of his serious medical need and the risk of transferring him based on (1) Hughes's review of Johnson's records and signature on Johnson's transport checklist and (2) the small size of the Forsyth County Detention Center and their daily visits to him. But the inferences that Johnson would have a factfinder draw from this evidence are not reasonable.

First, the response to Johnson's post-transfer grievance does not show that Fee or Hughes was involved in the decision to transfer Johnson. Fee's response

10

stated only that that he could not evaluate the grievance without seeing the state court order that prohibited his transfer, and Hughes simply signed off on Fee's response. Johnson argues that the supplemental response prepared by another officer shows that Fee and Hughes were responsible for the transfer because that supplemental response says that "we" sent Johnson to Augusta State Medical Prison "for the procedure [he] requested to be done." But there is no evidence that Fee or Hughes was involved in preparing the supplemental response. They did not write it, sign it, or review it—they signed only the initial response that was prepared days earlier.

In addition, the post-transfer grievance does not show that Fee or Hughes knew about Johnson's hernia or surgery before the transfer. The grievance asks for the name of the person who cancelled Johnson's surgery, but the grievance does not refer to Johnson's hernia or any other medical condition. Although the grievance mentions a cancelled surgery, neither Johnson's request for information nor Fee's and Hughes's response demonstrates that Fee or Hughes knew anything about Johnson's medical condition before the transfer.

Next, Johnson argues that Hughes's signing the transfer checklist creates questions of fact about whether Fee and Hughes knew about Johnson's hernia and his scheduled surgery because the paperwork "likely included the fact that he was scheduled for surgery nearby on that very day." Setting aside the fact that

11

Hughes's review of Johnson's transport paperwork shows nothing about Fee's knowledge of Johnson's hernia or surgery, neither the contents of Johnson's folder nor the transfer checklist appears in the record. And Johnson's assertion that the folder or checklist might have included information about his surgery is pure speculation. Although we draw all reasonable inferences in Mr. Johnson's favor, "an inference based on speculation and conjecture is not reasonable." Avenue CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation marks omitted).

Finally, Johnson claims that Fee and Hughes must have known about his hernia and scheduled surgery because the Forsyth County Detention Center "is a relatively small facility" and Fee and Hughes visited him daily while he was housed there. But Johnson's unsworn statement in his brief is not evidence, and it has "no probative value." See Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (unsworn statements do not meet the requirements of Federal Rule of Civil Procedure 56 and cannot be considered in ruling on a summary judgment motion).

Because Johnson did not present sufficient evidence from which a reasonable jury could find that Fee or Hughes subjectively knew about his hernia or surgery before the transfer, Johnson cannot establish that Fee or Hughes was deliberately indifferent to a serious medical need in violation of Johnson's Eighth

12

Amendment rights.  Fee and Hughes are therefore entitled to qualified immunity.

We reverse the denial of their motion for summary judgment and remand with

instructions to enter summary judgment in favor of Fee and Hughes.[4]

      **REVERSED AND REMANDED**.

---

[4]After Fee and Hughes filed this appeal, Johnson filed a motion to impose sanctions and a motion for leave to file a sur-reply brief.  In addition, in their initial reply brief, Fee and Hughes moved to strike Johnson's initial pro se brief.  We **DENY** all three motions.