[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13651
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-14061-KMM


ALBERT T. OWENS,

                                                    Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 26, 2015)

Before MARCUS, WILSON, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Albert Owens, a federal prisoner proceeding pro se and *in forma pauperis*, appeals the dismissal of his initial complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) against the Secretary of the Florida Department of Corrections (FDOC).  Owens also appeals the district court's subsequent order denying him leave to amend his complaint.  On appeal, Owens argues that his initial complaint alleged facts sufficient to state claims for violations of the Americans with Disabilities Act (ADA), Rehabilitation Act, Eighth Amendment, and Fourteenth Amendment because the prison's staff was deliberately indifferent to his medical needs and did not make reasonable accommodations for him. Owens further contends that the addition of extra facts and defendants in his proposed amended complaint would have cured any defects in his initial complaint, and, therefore, the district court abused its discretion when it denied him leave to amend his complaint.

After careful review of the pleadings and the district court order, and after consideration of the parties' briefs, we conclude that the district court did not err in dismissing Owens's initial complaint or abuse its discretion when it denied him leave to amend.  Accordingly, we affirm.

I.

We address Owens first argument that his initial complaint alleged facts sufficient to state valid claims.  We review de novo a district court's dismissal for

2

failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).  *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003).  Article III of the Constitution limits our jurisdiction to the consideration of cases and controversies.  U.S. Const. art. III, § 2; s*ee also Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam).  "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed."  *Al Najjar*, 273 F.3d at 1336.  Prisoners' claims for injunctive or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison.  *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam).  There is a narrow exception to the doctrine of mootness when a challenged action is capable of being repeated and when it evades review, but it only applies when: "(1) there is a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration."  *Al Najjar*, 273 F.3d at 1336 (internal quotation marks omitted).

Here, we conclude that Owens's claims set forth in his initial complaint are moot since his initial complaint requested injunctive relief concerning conditions in a prison at which he is no longer incarcerated.  Since filing the initial complaint, Owens has transferred to Santa Rosa Correctional Institution and has not

demonstrated that the challenged action falls within the narrow exception to the mootness doctrine.  A thorough review of the complaint reveals that this challenged action is specific to policies at Martin Correctional Institution (MCI).  Because he has transferred prisons, his claims for injunctive relief no longer present a case or controversy over which we have jurisdiction.  *See Wahl*, 773 F.2d at 1173.

## II.

Owens also argues that the district court abused its discretion by denying him leave to amend his complaint after his initial complaint was dismissed.  We review a district court's denial of a motion to amend a complaint for abuse of discretion.  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004).  The district court's underlying legal conclusion of whether an amendment to the complaint would be futile is reviewed de novo.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).  A district court should freely grant leave to amend a complaint when the underlying facts may be a proper subject of relief.  *Hall*, 367 F.3d at 1262.  However, a district court may properly deny leave to amend a complaint when the proposed amendment would be futile.  *Id.* at 1262–63.  An amendment is futile if "the complaint as amended is still subject to dismissal." *Id.* at 1263 (internal quotation marks omitted).

"The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)." *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We construe pro se complaints liberally; however, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. *See* 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 1954–55 (1998). The standard for determining liability under the Rehabilitation Act is the same as the

5

standard under the ADA.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

> To state a claim of discrimination under Title II, a claimant must prove:
>
> > (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).  Public entities must make reasonable modifications to their policies, practices, or procedures when necessary to avoid discrimination on the basis of a disability unless making the modifications would "fundamentally alter the nature of the service[s], program[s], or activit[ies]."  28 C.F.R. § 35.130(b)(7).

A disability is "a physical or mental impairment that substantially limits one or more major life activities," such as caring for oneself, concentrating, or thinking. 42 U.S.C. § 12102(1)(A), (2)(A).  A qualified individual with a disability is someone who has a disability and "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity," with or without reasonable modifications.  *Id.* § 12131(2).

A claimant is entitled to relief under 42 U.S.C. § 1983 if he or she can prove that a person acting under color of state law deprived him or her of a federal right.

*Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  Under the Eighth

Amendment, state actors are prohibited from inflicting cruel and unusual

punishment, such as punishments that are "totally without penological

justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399

(1981) (internal quotation marks omitted).  Courts examine whether prison

officials "acted with deliberate indifference to the inmates' health or safety."  *Hope

v. Pelzer*, 536 U.S. 730, 737–38, 122 S. Ct. 2508, 2514 (2002) (internal quotation

marks omitted).

To prove deliberate indifference in violation of the Eighth Amendment, a

claimant must show "(1) a serious medical need; (2) the defendant['s] deliberate

indifference to that need; and (3) causation between that indifference and the

[claimant's] injury."  *Gilmore v. Hodges*, 738 F.3d 266, 273–74 (11th Cir. 2013)

(internal quotation marks omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104,

97 S. Ct. 285, 291 (1976) (holding that a deliberate indifference to a prisoner's

medical needs violates the Eighth Amendment).  "A plaintiff must first show an

objectively serious medical need [that], if [left] unattended, pose[s] a substantial

risk of harm, and that the official's response to that need was objectively

insufficient."  *Gilmore*, 738 F.3d at 274.  An objectively serious medical need "is

one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's

7

attention." *Id.* (internal quotation marks omitted).  "Second, the plaintiff must establish that the official acted with deliberate indifference, i.e., the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence." *Id.*  Knowledge can be inferred from circumstantial evidence, such as the fact that the risk was obvious, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007), and "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment" constituting deliberate indifference, *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (per curiam).

Here, the district court did not abuse its discretion in denying Owens leave to amend his complaint because Owens's proposed amendments were futile.  *See Hall*, 367 F.3d at 1263.  Since only public entities may be liable under the ADA, Owens fails to state ADA claims against Crews, Bateman, Sheffield, and Lawrence in their individual capacities. *See Edison*, 604 F.3d at 1308.  Owens's claims against them in their official capacities are simply claims against the FDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991) (noting that suits against state officials in their official capacity should be treated as suits against the State).

However, Owens's ADA claim against the FDOC is not plausible on its face either.  Even if we were to assume that Owens is a qualified individual with a

8

disability, the proposed amended complaint did not demonstrate that Owens was excluded from or denied the benefits of FDOC services because of his disability. *See Bircoll*, 480 F.3d at 1083. The documents Owens attached to his proposed amended complaint reveal that he received medical services for the purpose of treating his disability. Clearly then, no reasonable modification was necessary to avoid discrimination against Owens on the basis of a disability. As demonstrated by his Individualized Service Plan (ISP), Owens had access to medical services and used those services. Because the proposed amended complaint did not state a plausible ADA claim, it also failed to state a claim under the Rehabilitation Act. *See Ellis*, 432 F.3d at 1326.

Similarly, the proposed amended complaint did not allege facts supporting a plausible claim for relief for a violation of the Eighth Amendment either. Accepting Owens's stated facts as true, it is clear that Owens had an objectively serious medical need. It is also clear that Owens's need for mental health care was obvious enough that even a lay person would recognize it after Owens mutilated his arm and ingested a razor blade. *See Gilmore*, 738 F.3d at 274. Furthermore, he was diagnosed with several mental disorders and prescribed treatment by a hospital psychiatric unit and MCI health care providers. However, Owens did not allege facts indicating that the FDOC or any of its officials' responses to his serious medical needs was objectively insufficient. *See id.* Additionally, Owens never

9

alleged facts to establish that negative effects had occurred or potentially could occur as a result of the limitations placed on when and where he could use his musical therapy device.

Finally, there is no evidence that suggests the FDOC or any of its officials acted with deliberate indifference by knowingly interfering with Owens's prescribed treatment. *See Bingham*, 654 F.3d at 1176. While Owens notified the FDOC, Bateman, and Lawrence through his grievance appeal that Valdes-Castillo had orally "inform[ed] him that he would be allowed to utilize his music device anywhere within the institution," he provided no evidence that Valdes-Castillo's alleged statement was part of a prescription, or that even if it was, the prescription was meant to last for eighteen years. Moreover, Owens was not denied readily available treatment and he was permitted to use his music device in certain areas of the prison. Owens was also the beneficiary of mental health evaluations and individualized counseling. *See id.* Accordingly, Owens's proposed amendments are still subject to dismissal, and are therefore considered futile. *Hall*, 367 F.3d at 1263.

**AFFIRMED.**

10