[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11491
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-00141-SLB

GERALD N. LINDLEY,

Plaintiff-Appellee,

versus

BIRMINGHAM, CITY OF, ALABAMA,
a municipal corporation, et al.,

Defendants,

FREDIA L. TAYLOR,
Nurse; in her professional and official capacity as an employee
of the City of Birmingham and as a Nurse at the Birmingham City Jail,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 13, 2016)

Before MARTIN, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Fredia Taylor appeals the district court's denial of her motion for summary judgment on Gerald Lindley's 42 U.S.C. § 1983 deliberate indifference claim and state-law negligence claim. Lindley's claims arise out of his nine-day detention at the Birmingham City Jail, where he alleges he was deprived of medical care for an infection in his leg. In denying Taylor's motion, the district court ruled that: (1) the claims in Lindley's amended complaint related back to his original complaint; (2) Taylor was not entitled to qualified immunity on Lindley's § 1983 claim; and (3) Taylor was not entitled to state-law immunity on Lindley's negligence claim. We have jurisdiction over this interlocutory appeal because it concerns whether Taylor is entitled to immunity as a matter of law. Moniz v. City of Fort Lauderdale, 145 F.3d 1278, 1281 (11th Cir. 1998). After careful review, we affirm.

I.

Federal Rule of Civil Procedure 15(c) governs when an amended complaint "relates back" to original filings for statute of limitations purposes. We review a district court's application of Rule 15(c) for abuse of discretion. Powers v. Graff, 148 F.3d 1223, 1226 (11th Cir. 1998). An amended complaint that adds a party or changes the name of a party "relates back" when: (1) the amendment "arose out of

2

the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; and (2) within the 120-day period for service provided by Rule 4(m), the new party "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B), (C)(i)–(ii); see also Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 548, 130 S. Ct. 2485, 2493 (2010). Constructive notice satisfies Rule 15(c)'s requirements and can be imputed to a new defendant through her attorney if that attorney also represents the parties originally sued. Kirk v. Cronvich, 629 F.2d 404, 407–408 (5th Cir. 1980),[1] abrogated on other grounds by Schiavone v. Fortune, AKA Time, Inc., 477 U.S. 21, 106 S. Ct. 2379 (1986).

There is no question that Lindley's amended claims arose out of the same conduct set out in the original complaint. Taylor asserts, however, that she did not have adequate notice "that [she] would have been named a defendant but for an error." Krupski, 560 U.S. at 548, 130 S. Ct. at 2493. But Lindley's original complaint named "Nurse Frida" as a defendant in addition to the Birmingham City Jail and a number of Taylor's coworkers there. The city attorney investigated the

---

[1] Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding on this Court. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

incident and filed pleadings on behalf of other defendants named in the original complaint. Once Lindley corrected Taylor's name to "Nurse Fredia L. Taylor" in his amended complaint, the city attorney undertook her representation as well. On this record, the district court did not abuse its discretion by imputing notice of the action to Taylor. See Kirk, 629 F.2d at 408. Because Taylor should have known that she was not named in the original complaint due to an error, Lindley's amended complaint "relates back" and his claims against Taylor are not time-barred.

## II.

"We review de novo a district court's denial of summary judgment based on qualified immunity, applying the same legal standards that governed the district court." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a denial of summary judgment, we are required to "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007) (quotation omitted).

4

A.

Qualified immunity "protects public officials to some extent from lawsuits against them in their individual capacities." Goebert v. Lee Cty., 510 F.3d 1312, 1329 (11th Cir. 2007). To claim qualified immunity, a defendant must first demonstrate that she was engaged in a discretionary duty. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). After that, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity because she violated a clearly established constitutional right. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). Because it is undisputed that Taylor was engaged in a discretionary duty as a nurse at the jail, we consider whether Lindley has overcome Taylor's claim of qualified immunity.

1.

We first consider whether the facts, taken in the light most favorable to Lindley, establish that Taylor violated a constitutional right. Deliberate indifference to a pre-trial detainee's serious medical needs is a violation of the Fourteenth Amendment's Due Process Clause. Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).[2] To establish deliberate indifference, Lindley must prove: (1) an "objectively serious medical need"; and (2) that Taylor

---

[2] The Eighth Amendment's Cruel and Unusual Punishment Clause governs deliberate indifference claims by convicted prisoners. Goebert, 510 F.3d at 1326. Because the minimum standards of medical care are the same under the Eighth and the Fourteenth Amendment, we apply caselaw developed under both to Lindley's claim. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1115 (11th Cir. 2005).

"acted with deliberate indifference to that need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quotation omitted).  In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Id. (quotation omitted).

Lindley was arrested and booked into the City of Birmingham Jail on January 24, 2008.  According to Lindley's affidavit, he began requesting treatment on January 28 for a sore on his leg that was "highly inflamed" and "swollen."  The condition of his leg worsened, and "it became too painful to raise [his] pants leg over [his] knee."  He "would eat little if any food due to [his] fever and nausea." Lindley was scheduled to be transported to the Shelby County Jail on February 2, 2008, but the Shelby County deputies at first refused to move him and told Birmingham Jail personnel that he needed immediate medical attention.  By the time he arrived at the Shelby County Jail that same day, Lindley "was unable to walk under [his] own power."  The nurse who examined him upon arrival noted that Lindley had an abscess with a "blackened center" and recommended immediate medical attention.  After processing, Lindley was transported directly to the hospital, where he was diagnosed with a staph infection.  He underwent two

6

surgeries, leaving him with an open wound "from the top of [his] thigh to mid calf" that took approximately ten months to heal.

Taylor claims that Lindley did not meet his burden of establishing a serious medical need because he "never deposed any doctors, nurses or other medical personnel regarding [his] alleged [staph infection]." However, Lindley's hospital records describe a "staph infection in his [] lower extremity" that required the removal of "[l]arge amounts of necrotic fascia." Even if Lindley's specific diagnosis were not clear from his medical records, his affidavits establish that he had a rapidly worsening infection whose severity should have been obvious to trained nurses. In fact, the nurse who examined him at the Shelby County Jail recommended immediate medical attention. In light of the foregoing, we agree with the district court that Lindley has demonstrated a serious medical need.

Lindley must also show that Taylor was deliberately indifferent to this serious medical need. To satisfy this element, Lindley must prove that: (1) Taylor had subjective knowledge of a risk of serious harm; (2) she disregarded that risk; (3) by conduct that was more than gross negligence. Goebert, 510 F.3d at 1326–27. Whether a defendant had subjective knowledge of the risk of serious harm is a question of fact, which can be demonstrated by circumstantial evidence. Farmer v. Brennan, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981 (1994). In a case concerning a delay in treatment, we decide whether the defendant's conduct was more than

gross negligence based on: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert, 510 F.3d at 1327.

Lindley "specifically recall[ed] reporting [his] medical need to Nurses Fredia Taylor and Allinda Brown" and filling out medical request forms four times a day between January 28 and February 2. During the week of January 28, he also showed his knee, which was "clearly swollen, red and very warm to the touch," to Taylor and Brown. After it became too painful for Lindley to raise his pants over his knee, he again "specifically remember[ed]" showing his infection to Taylor and other jail staff. During the relevant time period, a "staff [sic] infection" is mentioned three times in the ledger maintained by the jail. The entire time, Lindley alleges that he was given only Tylenol to manage the pain.

These allegations support the inference that Taylor had "subjective knowledge of a risk of serious harm" and "disregard[ed] [] that risk." Goebert, 510 F.3d at 1327. Lindley's affidavit indicates that he showed his leg to Taylor in serious enough condition that she should have provided prompt medical attention. The fact that deputies and a nurse from Shelby County recognized the severity of Lindley's infection the same day he left the Birmingham Jail bolsters this inference. Regarding whether Taylor's conduct amounted to more than gross negligence, Lindley's hospital records indicate that he arrived with an "extensive

8

infection of the right lower extremity, which was not responding to antibiotics." A reasonable jury could conclude that Taylor's decision to offer no treatment besides Tylenol for six days allowed the infection to worsen to the point that antibiotics were no longer effective, leading to the extensive loss of tissue and skin. See Goebert, 510 F.3d at 1327 (finding that a reasonable jury could conclude that a delay in treatment caused the loss of the plaintiff's child). Taken in the light most favorable to Lindley, the facts alleged establish that Taylor was deliberately indifferent to his medical needs.

2.

Because Lindley has properly identified a violation of his constitutional right to adequate medical care for purposes of surviving Taylor's motion for summary judgment, we next consider whether that right was clearly established at the time of the violation. This Court must determine whether a "reasonable official" would understand that what she was doing violated the right in question. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (quotation omitted). In this Circuit, a right can be clearly established in three ways. Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012). First, cases from the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the relevant events took place (here, the Alabama Supreme Court) may clearly establish the right. Id. at 1256. "A judicial precedent with materially identical facts is not

9

essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam). Second, a legal principle announced in caselaw may establish the right "with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law." Gilmore v. Hodges, 738 F.3d 266, 279 (11th Cir. 2013) (quotation omitted). Third, an official's conduct may be "so bad that case law is not needed to establish that the conduct cannot be lawful." Id. (quotation omitted). Cases successfully invoking the second and third rationales are rare. Coffin, 642 F.3d at 1015.

Taylor does not argue that existing caselaw failed to give her "fair warning that [her] alleged treatment of [Lindley] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002). Instead, she says that she should not be deprived of liability because Lindley "did not prove that he had MSRA or a staph infection." However, the district court identified specific Circuit precedent that gave Taylor the requisite notice that Lindley's condition was serious enough to require treatment. In Andujar v. Rodriguez, 486 F.3d 1199 (11th Cir. 2007), this Court held that dog bites on the arrestee's upper thigh created a serious medical need. Id. at 1203. The plaintiff was "crying in pain, and [] his ability to walk was

10

impaired" because of the bites.  Id.  Here, Lindley had an obvious sore on his leg that was red, swollen, and later developed a blackened center.  His condition worsened until it was too painful for him to undress himself and "even impossible for [him] to get out of bed."  By February 2, he could not walk or even "sit upright."  These symptoms were sufficiently similar to those described in Andujar to establish that Lindley needed treatment.

Another case from our Circuit, Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989), establishes that Taylor's treatment of Lindley was "so cursory as to amount to . . . deliberate indifference."  Id. at 789.  In Mandel, the plaintiff suffered a hip injury which worsened to the point "that he could barely stand."  Id. at 785.  The plaintiff repeatedly requested treatment over the course of two months, but was misdiagnosed with muscle inflammation and only given aspirin or a muscle relaxant.  Id. at 785–86.  By the time he was released, he needed a complete hip replacement.  Id. at 787.  In this case, Lindley likewise complained of pain so severe that it prevented him from standing.  And yet the only treatment he was provided before leaving the Birmingham Jail was Tylenol.  After Mandel, a reasonable nurse would know that this was constitutionally inadequate care.

Indeed, legal principles announced by this Circuit have also established this right such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law."

11

Gilmore, 738 F.3d at 279.  This Court has stated that "an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has . . . an urgent medical condition that would be exacerbated by delay."  Lancaster, 116 F.3d at 1425.  This general statement sufficiently establishes that not treating Lindley even after he became feverish and could no longer get out of bed for meals was deliberate indifference.  Because a reasonable nurse would have known that refusing Lindley treatment in his condition was a constitutional violation, we affirm the district court's ruling that Taylor is not entitled to qualified immunity with respect to Lindley's § 1983 claim.

## III.

We also affirm the district court's denial of state-law immunity with respect to Lindley's negligence claim.  Taylor argues that she is entitled to state-agent immunity under Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), and discretionary-function immunity under Alabama Code § 6-5-338.  Neither argument has merit.

## A.

In Cranman, a plurality of the Alabama Supreme Court clarified the scope of Alabama's state-agent immunity doctrine.  Under Alabama law, a state agent is immune from civil liability if she is engaged in:

(1) formulating plans, policies, or designs; or

12

    (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
      (a) making administrative adjudications;
      (b) allocating resources;
      (c) negotiating contracts;
      (d) hiring, firing, transferring, assigning, or supervising personnel; or
    (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
    (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
    (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Cranman, 792 So. 2d at 405.  After Cranman, the Alabama Supreme Court established a burden-shifting framework to analyze claims of state-agent immunity.  First, the defendant must demonstrate that "the plaintiff's claims arise from the defendant's performance of a discretionary function."  Hollis v. City of Brighton, 950 So. 2d 300, 306 (Ala. 2006) (quotation omitted).  The burden then shifts to the plaintiff to "establish that the defendant acted in bad faith or with malice or willfulness."  Id. (quotation omitted).

    Taylor fails at the first step.  She claims that her conduct falls under Cranman's third category: "discharging duties imposed on a department or agency by statute, rule, or regulation."  Id.  However, she has not identified any "statute,

13

rule, or regulation prescrib[ing] the manner for performing [her] duties." Id. As such, she is not entitled to state-agent immunity.

## B.

Taylor also claims discretionary-function immunity under Alabama Code § 6-5-338. The statute provides, in relevant part, "[e]very peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). According to the statute, a peace officer is one "empowered . . . to execute warrants, to arrest and to take into custody persons who violate [the law]." Id.; see also Walker v. City of Huntsville, 62 So. 3d 474, 501 (Ala. 2010). Taylor has presented no evidence that she is empowered to perform the duties of a peace officer. Therefore, she cannot claim discretionary-function immunity under Alabama Code § 6-5-338.

## IV.

We hold that Lindley's claims are not time-barred because his amended complaint "relates back" to his original complaint. Because we also conclude that Taylor is not entitled to qualified immunity or state-agent immunity, we affirm the district court's denial of summary judgment.

**AFFIRMED.**

14