[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12874

Non-Argument Calendar

_____

ROBERT RALPH DIPIETRO,

Plaintiff-Appellant,

*versus*

NINA COOPER,
Nurse,
MARY TERRY,
Nurse,
SHANEQUA MUSSA,
Chief Counselor,
PARNELL,
Lieutenant,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:19-cv-00113-CDL-MSH

_____

Before JORDAN, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Robert DiPietro, a Georgia prisoner proceeding *pro se*, appeals the district court's grant of summary judgment in favor of four prison officials on his Eighth Amendment claim, filed pursuant to 42 U.S.C. § 1983. He also appeals the district court's denial of his motions to appoint counsel, to appoint an expert witness, and for copies of the papers he submitted in opposition to the prison officials' motion for summary judgment. After careful consideration, we affirm on all issues.

**I**

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal. In reviewing the district court's order, we take the facts in the light most favorable to Mr. DiPietro. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242-43 (11th Cir. 2001).

On Thursday, July 13, 2017, Mr. DiPietro went to the medical center at his correctional facility with what he believed to be a spider bite. A few days earlier, he had noticed a bump about the

size of a pimple on his left leg.  By the time he went to the medical center on July 13, the bump was roughly the size of a quarter with a large pus head.  At the medical center, he saw Nurses Mary Terry and Nina Cooper.  Mr. DiPietro showed Nurses Cooper and Terry his leg and told them he thought he had been bitten by a spider, and that he required immediate medical attention.  Nurse Cooper told Mr. DiPietro his injury was not caused by a spider bite.  She also told him to submit a sick call request to have an appointment scheduled to see a doctor.  In the meantime, Nurse Cooper advised Mr. DiPietro to keep the affected area of his leg clean and avoid touching it.  Mr. DiPietro submitted a sick call request, and an appointment was scheduled for Monday, July 17, 2017.

Mr. DiPietro returned to the medical center on two subsequent days–on Friday, July 14, 2017, and on Saturday, July 15, 2017–where he again saw Nurses Cooper and Terry.  On both days, one of them told him that he had an appointment scheduled for Monday, July 17, when he was to return.  Mr. DiPietro testified at his deposition that he did not recall showing Nurses Cooper and Terry his leg on Friday or Saturday.  Later, in a sworn declaration, he averred that he showed them his leg on Friday, and pointed out that the injury was worse and more painful.

Mr. DiPietro returned to the medical center on Sunday, July 16, 2017 because the bump on his leg was larger, more painful, and now black and blue.  He encountered Lieutenant Douglas Parnell, the prison official on duty at the medical center, on Sunday.  Mr. DiPietro showed Lt. Parnell his leg and told him that he had been

to the medical center three days in a row and had not received care. Lt. Parnell told Mr. DiPietro that there were no medical professionals available that day, and that he was to return to his dorm. Absent emergencies, the medical center does not provide medical services on weekends.

When Mr. DiPietro refused to leave, Lt. Parnell handcuffed him and placed him in a segregation cell or shower stall. Approximately an hour later, Shanequa Mussa, a chief counselor at the prison, stopped by to speak with Mr. DiPietro where he was being held. Mr. DiPietro showed Ms. Mussa his leg and told her he needed immediate medical attention. According to Mr. DiPietro, Ms. Mussa told him he would receive care only when they said so, and "not a minute before." He was eventually permitted to return to his dorm.

The following day, on Monday, July 17, 2017, Mr. DiPietro went to the medical center at his scheduled appointment time, where he was seen by Nurse Denesha Harvey. According to Mr. DiPietro, Nurse Harvey immediately asked him why he had waited so long to seek medical attention. Mr. DiPietro again explained that he believed he had been bitten by a spider. Nurse Harvey told him that only testing could confirm what was wrong. In her notes, however, Nurse Harvey indicated that Mr. DiPietro's injury was due either to a bug bite or cellulitis. She also noted that the wound was "partially intact", filled with clear fluid, and had "purulent drainage." Nurse Harvey prescribed Mr. DiPietro some antibiotics

and took a sample from the wound for testing. She also noted that the visit was "routine" rather than "urgent" or "emergent."

Results of initial testing showed that Mr. DiPietro had a staph infection. Further testing confirmed that he was suffering from Methicillin Resistant Staphylococcus Aureus. As a result, he was prescribed stronger antibiotics. Mr. DiPietro returned to the medical center for periodic cleanings and wound care over the course of approximately two months. The infection was treated, and the wound eventually healed, but left a scar.

Based on these events, Mr. DiPietro filed a § 1983 action against Nurse Cooper, Nurse Terry, Ms. Mussa, and Lt. Parnell, alleging that all four individuals were deliberately indifferent to his serious medical need. After discovery, the prison officials moved for summary judgment in their favor. Mr. DiPietro opposed the motion and submitted additional prison medical records in support of his claim. He also submitted a sworn declaration averring to his version of events. Separately, but on the same day, Mr. DiPietro filed a motion asking the district court to send him copies of the papers he submitted in response to the motion for summary judgment. Both motions were referred to a magistrate judge, who denied the motion for copies and recommended that the motion for summary judgment be granted. Mr. DiPietro timely objected to the magistrate judge's recommendation. In addition to his objections, Mr. DiPietro submitted a supplemental sworn declaration clarifying some of his earlier assertions. Of note, Mr. DiPietro

stated that Nurses Cooper and Terry never examined his leg. Instead, he averred, they looked at his leg from approximately 15-20 feet away and for a few seconds at most.

The district court reviewed the magistrate judge's recommendation, Mr. DiPietro's objections, as well as the record, and determined that summary judgment was appropriate. Mr. DiPietro timely appealed.

Over the course of the proceedings at the district court, Mr. DiPietro asked the district court to appoint counsel and an expert witness, which the district court declined to do. Mr. DiPietro now appeals the district court's denial of these requests and the denial of his motion for copies.

## II

We review *de novo* a district court's grant of summary judgment, applying the same legal standard used by the district court and viewing the facts and drawing all inferences in the light most favorable to the nonmoving party. *See Johnson*, 263 F.3d at 1242–43. Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A

The Eighth Amendment forbids "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97,

105 (1976). To state a cognizable claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Specifically, a plaintiff must establish "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Once a serious medical illness or injury has been established, a plaintiff must show that a defendant acted with deliberate indifference to that need. To establish deliberate indifference, a plaintiff must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). A delay in necessary treatment for non-medical reasons may establish deliberate indifference if the plaintiff provides evidence that "a delay in treating the need worsen[ed] the condition." *See Mann*, 588 F.3d at 1307. But mere evidence of negligence "in diagnosing or treating a medical condition" or a showing of medical malpractice does not establish deliberate indifference. *See Estelle*, 429 U.S. at 106. In sum, "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

The parties agree that Mr. DiPietro has established a serious medical need.  They disagree only on whether Mr. DiPietro provided sufficient evidence to create a genuine issue of material fact regarding the prison officials' deliberate indifference. For the reasons explained below, we conclude that he did not.

**B**

The district court properly granted summary judgment with respect to Mr. DiPietro's claims against Nurses Cooper and Terry. The summary judgment record here shows that Cooper examined Mr. DiPietro's injury on Thursday, July 13, 2017, the first time he presented himself at the medical center.  On the same day, she told him she did not think his bump was caused by a spider bite.  She advised him to keep the affected area clean and avoid touching it. Nurses Cooper and Terry also instructed Mr. DiPietro to submit a sick call request so an appointment could be scheduled for him. He did as he was told and an appointment was scheduled for the following Monday–July 17, 2017–which was communicated to him on the two subsequent days when he returned to the medical center.

Mr. DiPietro insists that Nurses Cooper and Terry were deliberately indifferent because Nurse Cooper's examination was no examination at all, because the advice to keep the injury clean and avoid touching it was incorrect medical advice, and because Nurses Cooper and Terry were mean and hostile.  According to Mr. DiPietro, Cooper looked at his leg only for a moment and from approximately 15-20 feet away.  But on this record, Mr. DiPietro's

quarrel with the quality of Nurse Cooper's examination and the medical advice she provided amounts only to a disagreement over a matter of medical judgment, which does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 107.

With respect to the claim of delayed medical treatment, Mr. DiPietro has adduced no evidence whatsoever that Nurses Cooper or Terry intended to delay his treatment, or that they were aware that his condition would be exacerbated by waiting three days for an appointment. *See Mann*, 588 F.3d at 1307. Mr. DiPietro has also adduced no evidence that the three-day wait, in fact, exacerbated his condition.

Mr. DiPietro argues that he introduced evidence, in the form of Nurse Harvey's statements to him, that shows that his condition was worsened by waiting until his scheduled appointment to be further treated, and that the district court was wrong to discount these statements as hearsay. As an initial matter, the district court still considered Nurse Harvey's statements, even though it expressed concern that they were inadmissible hearsay. In any event, Nurse Harvey's statements to Mr. DiPietro, hearsay or not, do not constitute evidence that the three-day wait worsened his condition. According to Mr. DiPietro, Nurse Harvey told him that the wound should have been drained immediately, and that failing to do so worsened his condition. But these statements simply re-

flect differences in medical opinion and judgment, which are insufficient to establish deliberate indifference under the Eighth Amendment. *See Estelle*, 429 U.S. at 106. [1]

In sum, even if Nurses Cooper and Terry could have done more for Mr. DiPietro, he has not established that scheduling him an appointment in three days and instructing him to keep his wound clean and avoid touching it was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (citation omitted). At most, Nurses Cooper and Terry acted negligently or committed medical malpractice. Their conduct did not amount to deliberate indifference. *See Estelle*, 429 U.S. at 106. [2]

## C

Mr. DiPietro has likewise failed to establish a genuine issue of material fact as to whether Lt. Parnell and Ms. Mussa acted with

---

[1] There is some conflicting evidence on whether Nurse Harvey drained Mr. DiPietro's wound on July 17, 2017, or a few days later. Mr. DiPietro insists that Nurse Harvey drained the wound during his first meeting with her on July 17, 2017. Mr. DiPietro's medical records, on the other hand, show that Harvey did not drain his wound until July 20, 2017, when tests results showed that Mr. DiPietro had M.R.S.A. We review the evidence on point in Mr. DiPietro's favor.

[2] Mr. DiPietro's reliance on *Lindley v. Birmingham*, 652 Fed. Appx. 801 (11th Cir. 2016), is misplaced because the record in that case differed markedly from the one here. Importantly, the evidence there showed that certain prison officials immediately recognized the severity of Mr. Lindley's infection, which was completely ignored by some other prison officials. *See id* at 806.

deliberate indifference. The record, viewed in the light most favorable to Mr. DiPietro, shows that Lt. Parnell and Ms. Mussa were aware that Mr. DiPietro had visited the medical unit three times before Sunday, July 16, and that a medical professional had determined that he did not present an emergency. There is no evidence that Lt. Parnell and Ms. Mussa, who are not medical professionals, had reason to believe, or knew, that Nurses Cooper and Terry had grossly misjudged Mr. DiPietro's medical condition each of the times they saw him. They were therefore entitled to rely on their assessments. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1159 (11th Cir. 2010).

The record, viewed in Mr. DiPietro's favor, indicates that Lt. Parnell and Ms. Mussa may have behaved very poorly towards Mr. DiPietro and treated him with little, if any, respect. Rude and hostile behavior towards prisoners, although improper, does not rise to the level of deliberate indifference.

### III

Mr. DiPietro also seeks review of the district court's denial of his motions for appointment of counsel. Mr. DiPietro filed two motions asking the district court to appoint counsel to assist him with deposing the prison officials, and with legal research. Mr. DiPietro expressed concern about retaliation if he deposed the prison officials himself. The district court denied both motions, citing Mr. DiPietro's demonstrated ability to litigate his case and the absence of complex or novel issues.

On appeal, Mr. DiPietro argues that the district court abused its discretion in denying his motions to appoint counsel because he (i) had trouble presenting his case below; (ii) suffers from severe depression and anxiety; (iii) lacked access to the prison law library; and (iv) was unable to edit his documents throughout litigation.

We review the denial of a motion for appointment of counsel for abuse of discretion. *See Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999). Plaintiffs in civil cases have no constitutional right to counsel. *See id*. Nevertheless, a district court may, in its discretion, appoint counsel for civil litigants. Appointment of counsel in a civil case is a privilege that is "justified only by exceptional circumstances, such as the presence of facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (alteration in original) (internal quotation marks and citation omitted). In determining whether exceptional circumstances exist, a court considers: (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to adequately investigate the case; and (4) whether the evidence will consist in large part of incidents the indigent witnessed himself. *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The district court did not abuse its discretion in denying Mr. DiPietro's motions because he failed to show that exceptional cir-

cumstances warranted appointment of counsel. The facts and issues presented were straightforward, and the record reflects Mr. DiPietro's ability to present his claims adequately, make arguments, and cite relevant legal authorities despite his *pro se* status. Furthermore, despite Mr. DiPietro's claims that he lacked access to the prison's law library and was unable to edit his filings, he made references to the district court's rulings numerous times and had no trouble supplementing his filings as he deemed necessary. Given Mr. DiPietro's demonstrated ability to adequately present his case, the district court was within its discretion in denying his motions for counsel.

## IV

Months after the close of discovery, and approximately one month after the magistrate judge recommended granting the defendants' motion for summary judgment, Mr. DiPietro filed a motion requesting that the district court appoint an expert. Mr. DiPietro argued that an expert witness was necessary to opine on whether a delay worsened his condition, and whether the conduct of Nurses Cooper and Terry fell below acceptable standards of care. The magistrate judge denied the motion in a well-reasoned order, which Mr. DiPietro objected to. The district court affirmed the magistrate judge's order after reviewing Mr. DiPietro's objections.

We review a district court's denial of a motion to appoint an expert witness for abuse of discretion. *See Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). District courts have broad discretion

under Federal Rule of Evidence 706 to appoint, either on a party's motion or its own, an independent expert to aid the court. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1348 (11th Cir. 2003). "Where a party requests the appointment of an expert to aid in evaluating evidence that is relevant to a central issue in the case, the court is obligated to fairly consider the request and to provide a reasoned explanation for its ultimate decision on the matter." *Id.* The court is, however, not required to grant the request to appoint an expert. "Quite the contrary, as long as the district court thoroughly considers a request for the appointment of such an expert and reasonably explains its ultimate decision thereon, that decision is vested in the sound discretion of the trial court." *Id.* at 1348-49.

Here, the district court considered Mr. DiPietro's request, denied it, and provided a reasoned explanation. In denying the motion, the district court explained that the nature of the alleged injury and the medical records were not so complex as to require expert testimony. It also determined that the motion was untimely because it was filed approximately seven months after the close of discovery, after the defendants filed their motion for summary judgment, and after a report and recommendation on the same motion had been submitted. Under these circumstances, it was not an abuse of discretion to deny the motion to appoint an expert.

## V

Mr. DiPietro also appeals the district court's denial of his motion for copies. At the same time he submitted his papers in

opposition to the motion for summary judgment, Mr. DiPietro submitted a motion asking the district court to send him copies of the same papers he filed in opposition to the motion for summary judgment. The magistrate judge, to whom the motion was referred, denied Mr. DiPietro's motion, noting that, although he was proceeding *in forma pauperis*, he was not entitled to have the cost of his discovery borne by the court. The order denying the motion for copies was set forth in the same document as the report and recommendation on the motion for summary judgment. Although Mr. DiPietro objected to the magistrate judge's recommendations on the motion for summary judgment, he made no reference to the magistrate judge's order of denial, or to the motion for copies. Consequently, the issue was not preserved for appellate review. See *United States v. Schultz*, 565 F.3d 1353, 1359-62 (11th Cir. 2009) ("The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates.") (quoting *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980)). *See also* Fed. R. Civ. P. 72(a).

Nevertheless, even if the issue was properly before us, Mr. DiPietro has failed to explain why the denial of his motion for copies was incorrect or prejudicial. According to Mr. DiPietro, he suffered some harm because he was unable to make references to some of his prior submissions. But the district court had and considered all of Mr. DiPietro's papers at all relevant times. Therefore, even if the issue was properly preserved for review, Mr. DiPietro has identified no error or harm in the district court's denial of the motion for copies. *See* 28 U.S.C. § 2111; Fed. R. Civ. P. 61.

16                    Opinion of the Court                    21-12874

## VI

For the reasons set forth above, we affirm.

**AFFIRMED.**